UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK EDWARD STRICKLEN,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>C. NORDTROM,<br><br>　　　　Defendant. | Case No.: 1:23-cv-00537 CDB (PC)<br><br>**FIRST SCREENING ORDER** |

Plaintiff Mark Edward Stricklen is proceeding *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983.

**I.　　SCREENING REQUIREMENT**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b). The Court should dismiss a complaint if it lacks a cognizable legal theory or fails to allege sufficient facts to support a cognizable legal theory. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

//

//

## II. PLEADING REQUIREMENTS

### A. Federal Rule of Civil Procedure 8(a)

"Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002). A complaint must contain "a short and plain statement of the claims showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Such a statement must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz*, 534 U.S. at 512 (internal quotation marks & citation omitted).

Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). Factual allegations are accepted as true, but legal conclusions are not. *Id.* (citing *Twombly*, 550 U.S. at 555).

The Court construes pleadings of *pro se* prisoners liberally and affords them the benefit of any doubt. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citation omitted). However, "the liberal pleading standard . . . applies only to a plaintiff's factual allegations," not his legal theories. *Neitzke v. Williams*, 490 U.S. 319, 330 n.9 (1989). Furthermore, "a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled," *Bruns v. Nat'l Credit Union Admin.*, 122 F.3d 1251, 1257 (9th Cir. 1997) (internal quotation marks & citation omitted), and courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks & citation omitted). The "sheer possibility that a defendant has acted unlawfully" is not sufficient to state a cognizable claim, and "facts that are merely consistent with a defendant's liability" fall short. *Iqbal*, 556 U.S. at 678 (internal quotation marks & citation omitted).

### B. Linkage and Causation

Section 1983 provides a cause of action for the violation of constitutional or other federal rights by persons acting under color of state law. *See* 42 U.S.C. § 1983. To state a claim under

2

1  section 1983, a plaintiff must show a causal connection or link between the actions of the
2  defendants and the deprivation alleged to have been suffered by the plaintiff. *See Rizzo v. Goode*,
3  423 U.S. 362, 373-75 (1976). The Ninth Circuit has held that "[a] person 'subjects' another to the
4  deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative
5  act, participates in another's affirmative acts, or omits to perform an act which he is legal required
6  to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740,
7  743 (9th Cir. 1978) (citation omitted).

### III. DISCUSSION

#### A. Plaintiff's Complaint

Plaintiff's complaint names C. Nordtrom, a physical therapist employed at the Substance Abuse Treatment Facility in Corcoran, as the sole defendant in the action. (Doc. 1 at 1-2.) By way of relief, Plaintiff seeks a declaratory judgment and compensatory and punitive damages in an amount to be determined at trial. (*Id*. at 10.) Plaintiff further seeks costs of suit, attorney's fees, and any other relief the court deems just and proper. (*Id*. at 11.)

*The Factual Allegations*

Plaintiff contends that on July 21, 2022, he started physical therapy with Defendant Nordtrom. (Doc. 1 at 3.) Plaintiff was scheduled to receive therapy twice a week, for 30 to 45 minutes per session. (*Id*.)

On September 2, 2022, Plaintiff contends Nordtrom asked Plaintiff whether he could tell a joke he had recently heard; Plaintiff agreed to hear the joke. (Doc. 1 at 3.) Nordtrom asked, "'why did the chicken cross the road?'" (*Id*.) When Plaintiff replied he did not know, Nordtrom "said 'because a Black guy was chasing him.'" (*Id*.) Plaintiff stated he "didn't laugh because it wasn't grasped." (*Id.*) Plaintiff asserts Nordtrom then "said 'it's because you know the stereotype that black people like to eat friend chicken.'" (*Id*.) Plaintiff is black. (*Id*.) Plaintiff contends Nordtrom then offered to tell him "a joke about a white person to balance it out." (*Id*.) Plaintiff ignored the suggestion and "continued on with the exercise in silence." (*Id*.) Twenty minutes later, Nordtrom "said 'You know I don't like to criticize people,'" to which Plaintiff responded "'that's a lie because a couple weeks back you said the Jews think they're the superior race.'" (*Id*. at 4.)

1  Nordtrom replied "'They do its in their book the Torah.'" (*Id*.) Plaintiff recounts he then stated

2  "'Yea but you said maybe that's why Hitler did what he did'" and Nordtrom "said 'What you're

3  calling me a Hitler apologetic?'" (*Id*.) When Plaintiff stated he was just repeating what Nordtrom

4  had previously stated to him, Plaintiff contends Nordtrom "said 'What man, you're out of here,

5  you have to go and I'm going to discharge you.'" (*Id*.) Plaintiff asserts that at the time he was still

6  unable to walk on his own without the assistance of crutches. (*Id*.)

7  Plaintiff contends the September 2, 2022 incident is "documented in plaintiff's Health

8  care grievance/602 Appeal process" and that Correctional Officer X. Lopez was a witness and has

9  been interviewed. (Doc. 1 at 4.)

10  Next, Plaintiff contends that on September 6, 2022, he received an "'Inmate priority

11  pass,'" a common practice wherein Plaintiff received two ducats for the week allowing him to

12  attend physical therapy. (Doc. 1 at 4.) On this date, when Plaintiff arrived, Nordtrom "turned

13  plaintiff around saying plaintiff wasn't scheduled for a session," despite Plaintiff's possession of

14  the ducat. (*Id*.) Plaintiff was denied a physical therapy session. (*Id*.) Plaintiff contends Nordtrom

15  sat him down and advised Plaintiff that he had "'four more sessions left and they will be for 15

16  minutes and we're not to have no conversations.'" (*Id*.) After asking Nordtrom, "is that it?"

17  Plaintiff was returned to his housing unit. (*Id*. at 4-5)

18  On September 29, 2022, Plaintiff underwent his last physical therapy session despite the

19  orthopedic surgeon's recommendation that Plaintiff continue to receive physical therapy to obtain

20  a full recovery after "achilles tendon repair procedure." (Doc. 1 at 5.)

21  On November 2, 2022, Plaintiff received another priority pass to see "institutional doctor

22  Griffith," who placed an order that Plaintiff receive physical therapy in accordance with the

23  orthopedic surgeon's recommendation. (Doc. 1 at 5.)

24  On November 28, 2022, Plaintiff received a priority pass for physical therapy. (Doc. 1 at

25  5.) When he arrived, Nordtrom provided Plaintiff with "one sheet of paper that displayed two

26  exercises printed out from his computer" and advised Plaintiff "that'll be it." (*Id*.) Plaintiff

27  contends Nordtrom willfully and deliberately ignored the recommendations of the orthopedic

28  surgeon and Dr. Griffith. (*Id*.)

Plaintiff asserts that because of Nordtrom's actions he continues to experience extreme tightness from "calf muscle to the heel bone," and range of motion and strength restrictions. (Doc. 1 at 5.) Plaintiff asserts he cannot bear full weight and walks with a noticeable limp. (*Id.*) He is unable to perform work duties to full capacity and is forced to sit "to allow swelling around the ankle to subside." (*Id.*) Further, Plaintiff is forced to lean on objects to navigate to the restroom due to stiffness and severe pain. (*Id.*) Plaintiff contends "mobility is seriously impaired" and he is "unable to sleep because of pain." (*Id.*) Plaintiff asserts Nordtrom was deliberately indifferent to his serious medical needs, knowing his conduct would cause serious harm to Plaintiff. (*Id.* at 6.)

### B. Plaintiff's Claim

***Deliberate Indifference to Serious Medical Needs***

Prison officials violate the Eighth Amendment if they are "deliberate[ly] indifferen[t] to [a prisoner's] serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "A medical need is serious if failure to treat it will result in '"significant injury or the unnecessary and wanton infliction of pain."'" *Peralta v. Dillard*, 744 F.3d 1076, 1081-82 (9th Cir. 2014) (quoting *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds by *WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc)).

To maintain an Eighth Amendment claim based on medical care in prison, a plaintiff must first "show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain. Second, the plaintiff must show the defendants' response to the need was deliberately indifferent." *Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012) (quoting *Jett*, 439 F.3d at 1096 (quotation marks omitted)).

As to the first prong, indications of a serious medical need "include the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014) (citation & internal quotation marks omitted); accord *Wilhelm*, 680 F.3d at

1122.

As to the second prong, deliberate indifference is "a state of mind more blameworthy than negligence" and "requires 'more than ordinary lack of due care for the prisoner's interests or safety.'" *Farmer*, 511 U.S. at 835. Deliberate indifference is shown where a prison official "knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id*. at 847. In medical cases, this requires showing: (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference. *Wilhelm*, 680 F.3d at 1122 (quoting *Jett*, 439 F.3d at 1096). "A prisoner need not show his harm was substantial; however, such would provide additional support for the inmate's claim that the defendant was deliberately indifferent to his needs." *Jett*, 439 F.3d at 1096, citing *McGuckin*, 974 F.2d at 1060.

Deliberate indifference is a high legal standard. *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" *Id*. at 1057 (quoting *Farmer*, 511 U.S. at 837). "'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'" *Id*. (quoting *Gibson v. County of Washoe, Nevada*, 290 F.3d 1175, 1188 (9th Cir. 2002)).

To prevail on a deliberate-indifference claim, a plaintiff must also show that harm resulted from a defendant's wrongful conduct. *Wilhelm*, 680 F.3d at 1122; *see also Jett*, 439 F.3d at 1096; *Hallett v. Morgan*, 296 F.3d 732, 746 (9th Cir. 2002) (prisoner alleging deliberate indifference based on delay in treatment must show delay led to further injury).

Here, liberally construing the complaint, Plaintiff has met the first prong of the deliberate indifference test by demonstrating the existence of an ankle condition following surgical intervention that a reasonable doctor would find important and worthy of treatment in the form of physical therapy, and that the condition affects his daily activities. *Colwell*, 763 F.3d at 1066. Further, Plaintiff has met the second prong of the deliberate indifference test by plausibly alleging that Defendant Nordtrom knew Plaintiff faced a substantial risk of serious harm and disregarded

that risk by refusing to provide Plaintiff continued physical therapy against the orders of the orthopedic surgeon and treating physician. *Farmer*, 511 U.S. at 847; *Wilhelm*, 680 F.3d at 1122. Further, Plaintiff demonstrated he suffered and continues to suffer harm because of Nordtrom's actions. *Id.*

## IV.     CONCLUSION AND ORDER

Based on the above, the Court finds Plaintiff has stated a cognizable Eighth Amendment deliberate indifference to serious medical needs claim against Defendant Nordtrom. The Court will issue a separate order directing service of the complaint.

IT IS SO ORDERED.

Dated:   **May 16, 2023**                                    _____
UNITED STATES MAGISTRATE JUDGE